# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALTERNATIVE COMMUNITY HEALTH CARE COOPERATIVE, INC. *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> ERIC HOLDER, Attorney General of the Untied States *et al.*, <br><br> Defendants. | CASE NO. 11cv2585-DMS (BGS) <br><br> **ORDER DENYING APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND NOTICE OF HEARING** |

Plaintiffs in this civil rights action filed an application for a temporary restraining order, seeking to enjoin the prosecution of cooperatives operating marijuana dispensaries under California law and landlords leasing real property to such cooperatives. Defendants opposed the motion and Plaintiffs replied. For the reasons which follow, Plaintiffs' application for a temporary restraining order is **DENIED**.

California's Compassionate Use Act, Cal. Health & Safety Code § 11362.5, "was designed to ensure that seriously ill residents of the State have access to marijuana for medical purposes, and to encourage Federal and State Governments to take steps toward ensuring the safe and affordable distribution of the drug to patients in need. The Act creates an exemption from criminal prosecution for physicians, as well as for patients and primary caregivers who possess or cultivate marijuana for medicinal purposes with the recommendation or approval of a physician." *Gonzales v. Raich*, 545 U.S. 1, 5-6 (2005) (footnotes omitted) ("*Raich I*").

The federal Controlled Substances Act, 21 U.S.C. § 21 U.S.C. § 801 *et seq*. ("CSA"), is "a closed regulatory system making it unlawful to manufacture, distribute, dispense, or possess any controlled substance except in a manner authorized by the CSA." *Raich I*, 545 U.S. at 13. It is "a comprehensive framework for regulating the production, distribution, and possession of five classes of 'controlled substances.'" *Id*. at 24. Marijuana is classified as a Schedule I drug, 21 U.S.C. § 812(c), which makes its "manufacture, distribution, or possession . . . a criminal offense, with the sole exception being use of the drug as part of a Food and Drug Administration preapproved research study." *Raich I*, 545 U.S. at 14. "Schedule I drugs are categorized as such because of their high potential for abuse, lack of any accepted medical use, and absence of any accepted safety for use in medically supervised treatment. *Id*., citing 21 U.S.C. § 812(b)(1). This reflects a determination by Congress in passing the CSA "that marijuana has no medical benefits worthy of an exception (outside the confines of a Government-approved research project). Whereas some other drugs can be dispensed and prescribed for medical use, *see* 21 U.S.C. § 829, the same is not true for marijuana. Indeed, for purposes of the Controlled Substances Act, marijuana has 'no currently accepted medical use' at all. § 812." *United States v. Oakland Cannabis Buyers' Cooperative*, 532 U.S. 483, 491 (2001). "Despite considerable efforts to reschedule marijuana, it remains a Schedule I drug." *Raich I*, 545 U.S. at 15 (footnote omitted).

Plaintiffs are two patients and four medical marijuana cooperatives who operate marijuana dispensaries under the Act. Starting October 5, 2011, the United States Attorney for the Southern District of California sent letters to two of the dispensary Plaintiffs and the landlords of the remaining two dispensary Plaintiffs, formally notifying them "that the marijuana dispensary's operations violate United States law and that the violations of federal law relating to the marijuana dispensary's operations may result in criminal prosecution, imprisonment, fines, and the forfeiture of the proceeds of the operations, as well as the real and personal property used to facilitate the operations." (Compl. Exs. 1 - 4.) The letters give the recipients 45 days to "discontinue sale and/or distribution" at the referenced locations or face the prospect of prosecution and forfeiture of assets. Plaintiffs seek a temporary restraining order enjoining Defendants from prosecuting the dispensaries and their landlords as stated in the letters.

1    Plaintiffs seek a temporary restraining order ("TRO") to give "breathing space to participants 2 and supporting entities until the judicial system produces an adjudication on the merits." (Reply at 1-2.) 3 Although the Court is not unsympathetic to providing "breathing space" to the parties (*see* Order Re: 4 Briefing Schedule, filed Nov. 8, 2011), as it may benefit all concerned, this is not a sufficient reason 5 under the law to issue a TRO. Outside of the confines of the law of preliminary injunctive relief, such 6 breathing space could only be accomplished with Defendants' consent, which they refused to give. (*See* 7 Opp'n at 2.)

8    Preliminary injunctive relief is "an extraordinary remedy that may only be awarded upon a clear 9 showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 10 7, 129 S. Ct. 365, 376 (2008). A party seeking injunctive relief under Federal Rule of Civil Procedure 11 65 must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in 12 the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is 13 in the public interest." *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 14 2009)(quoting *Winter,* 129 S. Ct. at 374). With respect to the showing a plaintiff must make regarding 15 his chances of success on the merits, the Ninth Circuit applies a sliding scale approach. *See Alliance* 16 *for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under the sliding scale approach, the 17 elements of the preliminary injunction test are balanced and, where a plaintiff can make a stronger 18 showing of one element, it may offset a weaker showing of another. *Id*. at 1131, 1134-35. "Therefore, 19 'serious questions going to the merits' and a hardship balance that tips sharply towards the plaintiff can 20 support issuance of an injunction, so long as the plaintiff also shows a likelihood of irreparable injury 21 and that the injunction is in the public interest." *Id*. at 1134-35.

22   **Likelihood of Success on the Merits**

23   Plaintiffs first contend that Defendants are judicially estopped from prosecuting the dispensaries 24 and their landlords under the CSA. Judicial estoppel is an equitable doctrine which "generally prevents 25 a party from prevailing in one phase of a case on an argument and then relying on a contradictory 26 argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

27   Plaintiffs point to Defendants' representations made during proceedings in *County of Santa Cruz* 28 *v. Holder*, U.S. District Court of the Northern District of California, case no. 03cv1802 (the "Santa Cruz

Action"). Plaintiffs in the Santa Cruz Action raised largely the same legal issues as do Plaintiffs herein in opposition to federal enforcement of the CSA against medical marijuana dispensaries operating under the Compassionate Use Act. After a publicly-announced change in federal enforcement policy of the CSA in the states authorizing medical use of marijuana, the parties stipulated to dismiss the action. (Pls' Request for Judicial Notice Ex. 2, 3 & 5.) Under the new policy ("Medical Marijuana Guidance"), as a general matter, federal resources would not be focused on enforcing the CSA in the states which enacted laws authorizing the medical use of marijuana against individuals who were in clear and unambiguous compliance with state law. (*Id*. Ex. 3.) Plaintiffs in this action argue that Defendants should be judicially estopped from resuming CSA enforcement in California.

In considering whether to apply the equitable doctrine in a particular case, three factors may inform the decision:

> First, a party's later position must be "clearly inconsistent" with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire*, 532 U.S. at 750-51 (internal quotation marks and citations omitted). These factors are not present here.

Prior to the dismissal of the Santa Cruz Action, Defendants argued the new policy rendered the case moot. (Pls' Request for Judicial Notice Ex. 5.) The plaintiffs disputed this based on the voluntary cessation doctrine. (*Id*.) The court was aware of the parties' contrary positions, which were based on the prospect that the federal enforcement policy could change. (*Id*.) However, rather than to resolve the mootness and voluntary cessation issues, the parties wanted to dismiss the case and entered into a Joint Stipulation of Dismissal Without Prejudice ("Stipulation") based on a shared understanding the enforcement policy could change in the future. Accordingly, the Stipulation provided: "If Defendants withdraw, modify or cease to follow the Medical Marijuana Guidance, the case may be reinstituted in its present posture on any Plaintiffs' motion . . .." (*Id*. Ex. 2.) Based on these facts it does not appear that the Court in the Santa Cruz Action was misled, that Defendants' current actions are clearly

inconsistent with its representations in the Santa Cruz Action, or that Defendants would derive an unfair advantage by resuming enforcement. Plaintiffs therefore have not shown a likelihood of success on the merits of the equitable estoppel claim.

Plaintiffs next contend that federal prosecution of dispensaries which comply with the Compassionate Use Act would violate the Fifth and Ninth Amendments of the United States Constitution. This argument was raised and rejected in *Raich v. Gonzalez*, 500 F.3d 850 (9th Cir. 2007) ("*Raich II*"). *Raich II* addressed the question "whether the liberty interest specially protected by the Due Process Clause embraces a right to make a life-shaping decision on a physician's advice to use medical marijuana to preserve bodily integrity, avoid intolerable pain, and preserve life, when all other prescribed medications and remedies have failed," and concluded that "federal law does not recognize a fundamental right to use medical marijuana prescribed by a licensed physician to alleviate excruciating pain and human suffering." 500 F.3d at 864, 866 (footnote omitted).

Plaintiffs argue that they can show a probability of success on this issue because times have changed since *Raich II*. The Due Process Clause protects "those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.'" *Reich II*, 500 F.3d at 862, quoting *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997).   In *Reich II*, the Court found, based on an extensive review of medical marijuana use practice and its prosecution, that "[f]or the time being, this issue remains in the arena of public debate and legislative action." *Id.* at 866 (internal quotation marks and citations omitted). Plaintiffs contend that at the time of *Reich II* only eleven states had passed laws decriminalizing medical marijuana use, *id*. at 865, but "now 23 states [have] authorized [medical marijuana] use, or have pending legislation authorizing such use, with a combined population of about 53% of the people in this country." (Pls' Mem. of P. & A. at 22.) The Court is not persuaded. Taking Plaintiffs' assertions regarding the acceptance of medical marijuana use at face value,[1] the 53% approval suggests that the issue of medical marijuana use has not left "the arena

/ / / / /

---

[1] The Court notes that Plaintiffs included the states which have legislation pending. It is doubtful that *Reich II* supports this notion. *See* 500 F.3d at 866 & n.15.

of public debate and legislative action." *Raich II*, 500 F.3d at 866. Plaintiffs have therefore not shown the probability of success on the merits of their Fifth and Ninth Amendment claims.

Plaintiffs also argue that the CSA exceeds the commerce powers given to Congress by the United States Constitution and that its enforcement would violate the Tenth Amendment. This argument too, has been raised and rejected in binding precedent. "Congress acted within the bounds of its Commerce Clause authority when it criminalized the purely intrastate manufacture, distribution, or possession of marijuana in the Controlled Substances Act." *Reich II*, 500 F.3d at 867 (summarizing the holding of *Raich I*). "Generally speaking, . . . power granted to Congress trumps a competing claim based on a state's police powers. 'The Court long ago rejected the suggestion that Congress invades areas reserved to the States by the Tenth Amendment simply because it exercises its authority under the Commerce Clause in a manner that displaces the States' exercise of their police powers.'" *Reich II*, 500 F.3d at 867, quoting *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 291 (1981). Accordingly, after *Reich I*, Plaintiffs could not state a claim either for exceeding the powers under the Commerce Clause or violating the Tenth Amendment. *See Reich II*, 500 F.3d at 867.

Finally, Plaintiffs contend that their due process rights were violated because Defendants intend to engage in selective prosecution. This is based on the assertion that like California, the state of Colorado has decriminalized medical marijuana use, but the Department of Justice is not enforcing the CSA against dispensaries in Colorado, only in California. Although the prosecutor's discretion whom to prosecute is broad, "[s]electivity in the enforcement of criminal laws is . . . subject to constitutional constraints. In particular, the decision to prosecute may not be deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Wayte v. United States*, 470 U.S. 598, 608 (1985) (internal quotation marks and citations omitted). "The requirements for a selective-prosecution claim draw on ordinary equal protection standards. The claimant must demonstrate that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." *United States v. Armstrong*, 517 U.S. 456, 465 (1996).

A number of legitimate factors are relevant to the exercise of prosecutorial discretion such as "the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan." *Wayte*, 470 U.S.

at 607. Defendants argue that such factors are relevant here. For example, California is the largest marijuana producer in the United States and therefore enforcement in California may have a greater deterrent effect on others. On the other hand, Plaintiffs have not shown that Defendants had an improper or irrational motive in sending formal notifications to dispensaries in California but not in Colorado. Indeed, if Plaintiffs' arguments were credited, it could lead to the untenable result that before any United States Attorney's Office may initiate enforcement action in one state, the Department of Justice would have to ensure that enforcement actions are initiated in other states as well to avoid selective prosecution claims. Because this would eviscerate prosecutorial discretion, Plaintiffs have not shown a likelihood of success on the merits of their selective prosecution claim.

**Likelihood of Suffering Irreparable Harm and Public Interest**

To the extent Plaintiffs rely on showing the likelihood of suffering irreparable harm based on the likelihood of success on the merits of any of their constitutional claims, *see, e.g., Elrod v. Burns*, 427 U.S. 347, 373 (1976), this is unavailing for the reasons stated above. Plaintiffs also contend that being deprived of access to marijuana as prescribed by their doctors, they will suffer severe harm, including pain, nausea and lack of appetite leading to excessive weight loss.

However, even if Plaintiffs were able to establish medical necessity for marijuana use, and the Court assumes, without deciding, that they can, the law does not permit it to use medical necessity as a basis for enjoining enforcement of the CSA. The CSA "reflects a determination that marijuana has no medical benefits worthy of exception" for medical use. *Oakland Cannabis Buyers Cooperative*, 532 U.S. at 491. Accordingly, "medical necessity is not a defense to . . . distributing marijuana . . . even when the patient is seriously ill and lacks alternative avenues of relief." *Id*. at 494 & n.7 (footnote omitted). Although federal courts have discretion in fashioning injunctive relief, *id*. at 495-96, this does not suggest they can consider any and all factors that might relate to the public interest or the medical needs of the parties, *id*. at 497. Specifically, the Court "cannot ignore the judgment of Congress deliberately expressed in legislation." *Id*. at 497 (internal quotation marks and citations omitted). In exercising its discretion when, as here, the Congress has deliberately struck a balance between controlled substances with medical use exceptions and those without, "the choice is simply whether a particular means of enforcing the statute should be chosen over another permissible means; the[] choice

1 is not whether enforcement is preferable to no enforcement at all." *Id*. at 487-98. Consequently, the
2 Court "may not consider the advantages and disadvantages of nonenforcement of the statute," but only
3 the advantages and disadvantages of various means of enforcement. *Id*. at 498.

4     This Court is sympathetic to the plight of the individuals who must rely on medical use of
5 marijuana to relieve pain and suffering. However, based on the present state of the law discussed above,
6 Plaintiffs have not met their burden of showing that they are likely to succeed on the merits, that there
7 are "serious questions going to the merits," likelihood of the type of irreparable injury the Court may
8 consider, or that issuing the requested TRO would be in the public interest *See Alliance for Wild*
9 *Rockies*, 632 F.3d at 1134-35. Accordingly, Plaintiffs' application for a temporary restraining order is
10 **DENIED**.

11     A hearing on Plaintiffs' motion for preliminary injunction will be held on **December 2, 2011**
12 **at 1:30 p.m.** in Courtroom 10, located at 940 Front Street in San Diego California. In light of the
13 parties' exhaustive briefing so far, no further briefing will be accepted, except that no later than noon
14 on **November 28, 2011** each side may file a memorandum of points and authorities no more than seven
15 pages in length, and supporting evidence, regarding Plaintiff's claims (1) that availability of marijuana
16 for medical purposes as provided by the Compassionate Use Act has in recent years become a protected
17 right under the Fifth and Ninth Amendments, and (2) that Defendants are engaging in selective
18 prosecution.

19     **IT IS SO ORDERED.**

21 DATED: November 18, 2011

23                                         HON. DANA M. SABRAW
                                          United States District Judge